885 So.2d 191 (2003)
Earl Jerome McGAHEE
v.
STATE of Alabama.
CR-00-2017.
Court of Criminal Appeals of Alabama.
May 30, 2003.
Rehearing Denied August 15, 2003.
*197 J. Drew Colfax, Montgomery, for appellant.
William H. Pryor, Jr., atty. gen., and Henry M. Johnson and Beth Jackson Hughes, asst. attys. gen., for appellee.
COBB, Judge.
Earl Jerome McGahee was convicted of two counts of capital murder and was sentenced to death following the September 11, 1985, murders of his ex-wife, Connie Brown, and Cassandra Lee. He now appeals from the denial of his Rule 32, Ala. R.Crim. P., petition. We affirm.
On direct appeal of McGahee's conviction and death sentence, this Court summarized the evidence presented at McGahee's trial. McGahee v. State, 554 So.2d 454 (Ala.Crim.App.1989). In that opinion, we stated:
"On September 11, 1985, Connie Brown (the appellant's ex-wife), Cassandra Lee and Dee Ann Duncan were all nursing students at George C. Wallace Junior College in Selma, Alabama. That morning, Brown, Lee and Duncan were in a class of thirty-four students in a classroom in the Science Building at the junior college. At approximately 10:00 that morning, the appellant came to this classroom and asked to see Brown. The instructor, Shelia Guidry, told Brown that she could leave the classroom. Brown left the room with the appellant and she went to the office of Joyce Howell, a secretary at the college, and asked to use the telephone. Brown appeared nervous and Howell helped Brown dial the phone numbers. Brown made calls to an elementary school and to her mother. The appellant came into the office while Brown was making the phone calls. As a result of her conversation with Brown, Howell called campus security to remove the appellant from the campus. Howell then walked Brown back to her classroom.
"While Brown was out of the classroom, Guidry had recessed the class for a short break. Brown returned to the class at the end of the break and took her seat. Many of the students were in the classroom at this time because they had remained in the room during break or they had returned from the break.
"Brown sat directly in front of Lee and to the right of Duncan. Shortly after Brown returned to the classroom, the appellant McGahee appeared at the door and asked Brown to come outside. Brown refused.
"At this point, the appellant entered the classroom and shut the door. He pulled a pistol from his pants and aimed it at Brown. A shot was fired and the appellant began walking towards Brown. All of the students began fleeing the classroom. Lee was unable to leave the classroom because Brown fell across her desk and then she (Lee) was shot by the appellant. Duncan fell as she was leaving the classroom and remained on the floor and acted hurt.
"Brown struggled to the front of the classroom and fell to the floor. The appellant then began kicking and stomping Brown.
"Dana Andrews was walking down a hallway in the Science Building that morning when she saw the students running out of Guidry's classroom and heard gunshots. She went to the room to see if she could help and pushed open the classroom door. Andrews saw the appellant `leaning over and he had her [Brown's] legs lifted up with his left arm and he had his right arm, he was pulling her panties off.' (R-474).

*198 "Ferrin Eiland, an instructor at the college, went to Guidry's classroom when he heard the students screaming. He looked through the door window and saw Brown lying on the floor naked. Brown's legs were propped up and parted and the appellant was kneeling between her legs. Eiland saw the appellant strike Brown twice on the chest with his fists.
"Charles Duckett, also an instructor at the college, went to Guidry's classroom when he heard there had been a shooting. Duckett looked in the door window and saw the appellant block the door with a chair. When Duckett heard several shots, he went downstairs and told Eiland to call an ambulance. When he returned to the classroom door, he saw the appellant with a gun in his hands and his hands were bloody. Duckett asked the appellant if he could help the people who were hurt and the appellant replied that no one was hurt and then waved the gun at Duckett.
"While Dee Ann Duncan was lying on the floor pretending to be hurt, she heard the appellant say to Brown, `Get up, Bitch' (R. 780). He told Brown that nothing was wrong with her and he began kicking her. He then said several times, `give it to me like you had used to" and "you make my d___ hard' (R-781). Duncan noticed that Brown did not have her jeans on.
"At some point, the appellant came over to Duncan and put his hands between her legs and began rubbing them. He then jerked her head up and asked her what was wrong. The appellant began striking Duncan's head with the pistol and Duncan blacked out.
"Truett McGee testified that he went to 1410 Philpott in Selma on the morning in question to investigate an unauthorized use of a motor vehicle. He was told by a Mrs. Redd that the appellant had taken her car. Mrs. Redd was a relative of the appellant. While McGee was investigating this incident, he received a call that there had been a shooting at the college.
"McGee proceeded to the college and went to the classroom in the Science Building. When he looked through the door window, the appellant pointed a pistol at him. McGee then heard a shot. McGee told the appellant to throw out his pistol and come out of the classroom. The appellant complied and was arrested and taken into custody.
"Officer Jerry Ward of the Selma Police Department then took the appellant to a patrol car and read him his Miranda [v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966),] rights. While he was being transported to the police station, the appellant began talking. He stated, `Well, if the son of a bitch lives, it ain't my fault cause I gave her a free ticket to heaven. If the son of a bitch lives it's a miracle. It's only because Jesus must want her to.' (R-761, 763). The appellant further stated that things didn't work out like he wanted them to so he `started busting caps (R. 763).' He told the police that, if he had taken all the shells in the classroom that he had in the car, the police would not have taken him alive.
"When the police entered the classroom after the appellant had been taken into custody, they discovered Lee, Brown and Duncan in the classroom. Brown was already dead and Lee and Duncan were injured and were transported to Selma Medical Center.
"Lee arrived at the hospital with multiple (five) gunshot wounds to her body. When she arrived at the hospital, Lee had no palpable blood pressure, she had suffered some blood loss and she was *199 paralyzed from the waist down. Lee was resuscitated with fluids and given two pints of blood. Surgery was performed on Lee to repair an injury to her spleen. One of the gunshots caused an air leak in Lee's lungs but surgery could not be performed on the lungs because Lee's condition was not stabilized. After surgery, Lee's family requested that Lee not receive any more blood transfusions because she was a Jehovah's Witness.
"Lee died on September 21, 1985[,] as a result of complications from the gunshot wounds, i.e., meningitis and adult respiratory distress syndrome. Medical experts testified that the fact that Lee did not receive any more blood transfusions after her family's request did not contribute to her death because they were able to compensate for any blood loss by other means.
"Duncan suffered a depressed skull fracture but survived. As a result of her injury, she lost the ability to taste and smell.
"An autopsy performed on Brown revealed that she died as a result of repeated blows to the face and head which resulted in multiple fractures to the skull and subsequent injury to the brain. Dr. Allen Stillwell, a forensic pathologist, testified that these injuries would be consistent with Brown's being hit with the butt handle of the gun and being stomped with a foot. He further stated that Brown had been strangled. Brown also received blunt trauma injuries to her upper abdomen area as well as two gunshot wounds to her left arm. However, these injuries were of a non-fatal nature. Stillwell found no evidence in Brown's body of recent sexual activity.
"Lonnie Ray Hardin, a firearms and toolmarks expert with the Department of Forensic Sciences, testified that the bullets removed from Lee's and Brown's bodies by Dr. Stillwell were fired through the same .357 Magnum gun which the appellant threw out of the classroom. The hammer of this gun was found on the floor in the classroom. Hardin testified that it would take a considerable amount of force to dislodge the hammer from the gun. The State then rested its case.
"The appellant's first three witnesses were the psychiatrists who examined him at the Taylor Hardin Secure Medical Facility and who served on the Lunacy Commission.
"Drs. Omar Mohabbott, Marino S. Tulao and Kamal Nagi all testified that, based on their examinations of this appellant McGahee, they found him competent to stand trial. Drs. Tulao and Nagi stated that they also found the appellant to be sane at the time these offenses were committed. Dr. Mohabbott testified that he did not examine the appellant concerning his sanity at the time of these offenses.
"Elizabeth Marie Sapala, a private psychiatrist appointed to assist the defense, testified that, although she found the appellant to be competent to stand trial, she believed the appellant lacked the capacity to conform his conduct to the requirements of law at the time of this offense. She stated that the appellant was unable to resist the rage inside of him due to several stress factors, i.e., the appellant's unemployment, his financial situation, his divorce from Brown and subsequent custody disputes over their child, his problems with his mother and his substance abuse.
"The appellant testified that he first met Brown when she was pregnant with her first child, Anwon, whom the appellant later adopted after he and Brown *200 were married. Brown and the appellant became friends and later married on September 12, 1980. The appellant testified that the marriage took place because Brown told him she was pregnant but the appellant later learned that she was not pregnant. Brown then became pregnant and had a child by the appellant, named Earl Jerome McGahee, Jr. The appellant and Brown lived in New Orleans, Louisiana, because the appellant was in the Coast Guard and was stationed there. While there, the appellant pleaded guilty to a child abuse charge and received counseling. He testified that Brown treated him badly when they lived in New Orleans. She would invite relatives to stay with them for long periods of time without his permission. He found his wife at home one day dressed in a nightgown and a man was in the house. One day the appellant came home and Anwon ran up to him and called him "Daddy." Brown told Anwon to get away from the appellant because he wasn't Anwon's father. The appellant stated he got mad and accidentally hit Anwon. Brown left the house with the two children and had the appellant arrested for cruelty to a juvenile. The appellant pleaded guilty to that charge and served twelve months and twelve days in jail.
"Brown returned to Selma after the appellant was arrested. She divorced the appellant and took back her maiden name, Brown.
"When the appellant was released from jail, he returned to Selma and lived with his mother while attending George C. Wallace Junior College. In July of 1985, the appellant's mother "kicked him out of the house" and filed reckless endangerment charges against him.
"On the day in question, the appellant went to his mother's house to talk to his sister. As he was leaving, he noticed the keys to his mother's car. He took the keys and drove the car to the college. He then went to Brown's classroom and asked her to get Earl, Jr., out of school so that he, the appellant, could see him. Brown called the school and then told the appellant he couldn't take Earl, Jr., from the school.
"The appellant then went back to his mother's car and got her gun. He went to the classroom to see Brown but she would not talk to him. He pulled the pistol from his pants and said, `What about now?' (R. 968). Brown jumped up and the appellant pulled the trigger. The appellant then `went upside her head' with the pistol and kicked her in the head. He stated he removed Brown's clothes because she had disgraced his name and he wanted to disgrace her. He denied making sexual advances toward her.
"The appellant testified that he didn't mean to shoot Lee and he hit Duncan because he panicked.
"The State presented several witnesses on rebuttal, including a clinical psychologist, to refute the appellant's allegations that he was insane at the time these offenses were committed."
554 So.2d at 456-59.
This Court affirmed McGahee's conviction, but reversed his death sentence and ordered the trial court to conduct a new sentence hearing. McGahee v. State, 554 So.2d 454 (Ala.Crim.App.1989). The State and McGahee both filed a petition for certiorari review, and the Alabama Supreme Court affirmed this Court's judgment. Ex parte McGahee, 554 So.2d 473 (Ala.1989). Following a second sentence hearing, the trial court again sentenced McGahee to death. McGahee appealed, and this Court affirmed the sentence. McGahee v. State, 632 So.2d 976 (Ala.Crim.App.1993). The *201 Alabama Supreme Court affirmed this Court's judgment. Ex parte McGahee, 632 So.2d 981 (Ala.1993).
On December 6, 1995, McGahee filed a Rule 32, Ala. R.Crim. P., petition in the Marengo Circuit Court. The petition was dismissed, then was reinstated and transferred to the Dallas Circuit Court. On July 19 and 21, 2000, the circuit court held an evidentiary hearing on the postconviction petition.[1] On April 24, 2001, the circuit court entered an order denying the petition. This appeal follows.

I.
At the outset, we note that the trial court's denial of McGahee's Rule 32 petition is governed by the following standard:
"`We apply an abuse of discretion standard of review to the circuit court's denial of a Rule 32, Ala. R.Crim. P., petition for postconviction relief. See Elliott v. State, 601 So.2d 1118 (Ala.Cr.App.1992). If the circuit court is correct for any reason, even though it may not be the stated reason, we will not reverse its denial of the petition. See Roberts v. State, 516 So.2d 936 (Ala.Cr.App.1987).' "Reed v. State, 748 So.2d 231, 233 (Ala.Crim.App.1999)."
Grady v. State, 831 So.2d 646, 648 (Ala.Crim.App.2001).

II.
McGahee first argues that the trial court erred when it determined that his claim of juror misconduct was procedurally barred. In his Rule 32 petition, McGahee alleged that Juror D.D. failed to disclose that he had previously been the victim of a violent crime. (C. 581.)[2] The State argued in its answer that the claim was procedurally barred because it could have been, but was not, raised at trial or on appeal. Rule 32.2(a)(3) and (5), Ala. R.Crim. P. (C. 353, 595.)
At the evidentiary hearing, McGahee's trial counsel, Bruce Boynton, testified that his pretrial request for funds to hire an investigator had been denied. Trial counsel further stated that cocounsel would have helped in the case, but that he did not have cocounsel, and he represented McGahee alone. (R. 32.) Counsel testified that, if he had been able to hire an investigator, he would have been able to get more information about the veniremembers, but that he was unable to do such investigation by himself. Trial counsel further stated that, during jury selection, he attempted to obtain impartial jurors  persons who had not been victims of serious violent crimes, and who had no friends or relatives who had been victims. (R. 25-26.) On cross-examination, Boynton testified that if a prospective juror had been the victim of a violent crime nearly 10 years before the trial, he would have considered the remoteness of the crime in determining whether to exercise a peremptory strike. When asked whether he would have struck a prospective juror who had been a robbery victim, but who indicated that upon conviction he would vote for life imprisonment without parole, Boynton testified, "I would have very much wanted that person on the jury given the circumstances that we were developing at that time." (R. 63.) In response to the State's question, "So if you had to choose between being a robbery victim or a victim of a violent crime, if he was going to vote for life without parole?" Boynton stated, "He's my juror." (R. 63.)
*202 Although the trial judge stated that the juror-misconduct claim was procedurally barred, he allowed the juror to testify without prejudice to the State's claim of procedural bar. (R. 102.) D.D. testified that he was selected as a juror in McGahee's 1986 trial. D.D. said that he had formerly been employed at a service station and that in 1977, while he was employed at the service station, robbers had entered the store brandishing a gun and a knife. He was struck in the face, and the robbers took money from the station. (R. 102-03.) D.D. said that he did not know whether any trial was held as a result of the robbery. He said that he testified against one of the robbers, but acknowledged that he might have testified before a grand jury and not at a trial. D.D. said that the attorneys at McGahee's trial did not ask whether he previously had been a witness at a grand jury proceeding. (R. 106.) He said he did not intentionally withhold information from McGahee's defense counsel, but he was not thinking about the robbery when he was on the jury. D.D. further testified that the fact that he had been a victim of a crime did not affect his feelings about McGahee's guilt or innocence, nor did it prejudice him against McGahee. (R. 107-08.)
D.D. also testified that he knew before he was selected for the jury that he would not vote for the death penalty and that, in fact, he voted for life imprisonment without parole. (R. 108-09.) He stated that he did not inform the attorneys at McGahee's trial that he was opposed to the death penalty. (R. 109.)
The record from McGahee's trial reveals that during voir dire questioning defense counsel asked, "How many of you have served as a prosecuting witness in a previous case involving criminal charges?" D.D. did not respond to that question. (TR. 250.)[3] We note that D.D. also did not respond to questions about whether any veniremember was opposed to capital punishment. (TR. 225-26, 229-30.) At the hearing on the Rule 32 petition, D.D. testified that he knew he was not the only person opposed to capital punishment. (R. 109.)
In its order denying McGahee's Rule 32 petition, the trial court determined that the juror-misconduct claim was procedurally barred because it could have been, but was not, raised at trial and on appeal. (C. 754.) The court stated that, in addition, McGahee failed to establish that the claim was based on newly discovered evidence. (C. 824.) The trial court addressed the merits of the claim in the alternative to its procedural bar holding. (C. 824-32.) The court quoted extensively from this Court's opinion in Brown v. State, 807 So.2d 1 (Ala.Crim.App.1999). In Brown, the appellant claimed in postconviction proceedings that he was entitled to a new trial because a juror had failed to disclose that, years before the trial, he had been the victim of a robbery. Observing that there was no evidence indicating that Brown had been prejudiced by the juror's failure to disclose this information, and that the juror testified that his experience as a robbery victim did not affect his impartiality, we affirmed the denial of the postconviction petition. 807 So.2d at 12. The trial court concluded that McGahee was not entitled to any relief on his claim because there was no evidence indicating that he had been prejudiced by the lack of information concerning the juror's involvement in the robbery, that the juror testified at the Rule 32 hearing that his experience did not have an impact on his impartiality at McGahee's trial, and that trial counsel testified that he would have kept D.D. as a *203 juror even if he had known about the his victimization because D.D. was opposed to the death penalty. (C. 831-32.)
On appeal, McGahee contends that the trial court erred when it determined that the claim was procedurally barred. He further argues that the trial court erred in its analysis of the merits, because the relevant legal standard is whether the juror misconduct might have prejudiced the defendant, and the trial court applied the actual prejudice standard. We agree with McGahee that the trial court erred when it determined that the claim was procedurally barred. While we also agree with McGahee that the "might-have-been-prejudiced" standard is the appropriate one, a thorough review of the record reveals that McGahee failed to meet this burden of proof as to this claim. Therefore, we affirm the trial court's denial of this claim.
A juror-misconduct claim is cognizable under Rule 32.1(a), Ala. R.Crim. P., as an alleged constitutional violation, and not as newly discovered evidence. Ex parte Pierce, 851 So.2d 606, 613 (Ala.2000). The Pierce Court also stated that the Rule 32.2 grounds of preclusion apply to juror-misconduct claims. Id. at 614. Rule 32.3, Ala. R.Crim. P., provides that, once the State has pleaded a ground of preclusion, the petitioner has the burden of disproving the ground of preclusion by a preponderance of the evidence. We believe that McGahee sustained his burden of disproving the grounds of preclusion pleaded by the State.
Trial counsel testified at the Rule 32 hearing that the trial court had denied his request for funds to hire an investigator, and that, if he had been able to hire an investigator, he would have been able to obtain information on the veniremembers. Counsel stated that obtaining information on the venire "was virtually an impossibility to do...." (R. 33.) Nothing in the record suggests that trial counsel had any information about Juror D.D.'s being the victim of a robbery. Nor does the record support a finding that trial counsel received any information about Juror D.D. after trial, but within the time limit for filing a motion for a new trial. To the contrary, the record indicates that trial counsel did not have any information that Juror D.D. had failed to disclose any information. Therefore, we find that the Rule 32 court abused its discretion when it determined that the juror-misconduct claim was precluded because it could have been raised at trial or on appeal.
"The proper standard for determining whether juror misconduct warrants a new trial, as set out by this Court's precedent, is whether the misconduct might have prejudiced, not whether it actually did prejudice, the defendant." Ex parte Dobyne, 805 So.2d 763, 771 (Ala.2001). The trial court incorrectly applied the actual-prejudice standard to this claim. (C. 831.) Although the trial court applied an incorrect standard, we nonetheless agree with the trial court's determination that McGahee's claim as to this issue has no merit.
"It is true that the parties in a case are entitled to true and honest answers to their questions on voir dire, so that they may exercise their peremptory strikes wisely. See Fabianke v. Weaver, 527 So.2d 1253 (Ala.1988). However, not every failure to respond properly to questions propounded during voir dire `automatically entitles [the defendant] to a new trial or reversal of the cause on appeal.' Freeman v. Hall, 286 Ala. 161, 166, 238 So.2d 330, 335 (1970); see also Dawson v. State, [710 So.2d 472, 474 (Ala.1997)]; and Reed v. State, [547 So.2d 596 (Ala.1989)]".
Ex parte Dobyne, 805 So.2d at 771-72.
The Supreme Court in Ex parte Dobyne identified factors to be used to *204 determine whether probable prejudice existed. The factors include the temporal remoteness of the event, the ambiguity of the question asked, and the juror's willfulness in providing inaccurate information. 805 So.2d at 772.
"The form of prejudice that would entitle a party to relief for a juror's nondisclosure or falsification in voir dire would be its effect, if any, to cause the party to forgo challenging the juror for cause or exercising a peremptory challenge to strike the juror. Ex parte Ledbetter, 404 So.2d 731 (Ala.1981); Warrick v. State, 460 So.2d 320 (Ala.Crim.App.1984); and Leach v. State, 31 Ala.App. 390, 18 So.2d 285 (1944). If the party establishes that the juror's disclosure of the truth would have caused the party either to (successfully) challenge the juror for cause or to exercise a peremptory challenge to strike the juror, then the party has made a prima facie showing of prejudice. Id."
Ex parte Dobyne, 805 So.2d at 772-73.
Juror D.D.'s victimization occurred nine years before McGahee's trial, so the remoteness of the event is fairly substantial. D.D. testified at the Rule 32 hearing that he did not intentionally withhold information when the attorneys asked whether anyone had been a victim of a crime. That D.D. did not intentionally withhold information might best be illustrated by D.D.'s testimony from the Rule 32 hearing, during questioning by McGahee's counsel:
"Q Were you ever a victim of a crime?
"A Was I?
"Q Yes.
"A No, sir.
"Q You have never been a victim of a crime?
"A No, never have.
"Q Were you attacked at the [service station]?
"A Yes, sir."
(R. 102.) For reasons that are unclear from the record before us, D.D. either did not readily recall his experience, or, perhaps, he did not understand the term "victim." What is clear is that D.D. did not intentionally and willfully fail to disclose the information. The remoteness of the information and the failure to intentionally withhold information weigh against a determination that McGahee was prejudiced by D.D.'s serving on the jury.
Furthermore, trial counsel testified at the Rule 32 hearing that, if a juror had been a victim of a violent crime and if he indicated that he would vote for life imprisonment without parole, counsel would have kept him as a juror. He emphasized that he would have "very much" wanted that person as a juror. (R. 63.) Based on trial counsel's testimony, it is clear that, even if D.D. had disclosed the truth during voir dire questioning, counsel would not have exercised a peremptory challenge or challenged him for cause. McGahee failed to establish that he might have been prejudiced by the juror's failure to disclose information about being a robbery victim years before McGahee's trial.
Even though was find that the juror-misconduct claim was not procedurally barred, and even though the trial court applied the actual-prejudice standard, we nonetheless affirm the court order insofar as it denied this claim. Application of the might-have-been-prejudiced standard demonstrates that McGahee is not entitled to relief on this claim, because he did not establish that trial counsel would have challenged D.D. if he had responded accurately to the questions. McGahee failed to sustain his burden of proof on this claim. Therefore, we affirm the trial court's denial of relief.

*205 III.
In Issue II of his appellate brief, McGahee argues that the court hearing his Rule 32 petition erred when it denied relief on his claim that he did not receive effective assistance of trial counsel during the guilt phase of his capital trial. We disagree.
"`In order to prevail on a claim of ineffective assistance of counsel, a defendant must meet the two-pronged test articulated by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):
"`"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable."
"`466 U.S. at 687, 104 S.Ct. at 2064.
"`"The performance component outlined in Strickland is an objective one: that is, whether counsel's assistance, judged under `prevailing professional norms,' was `reasonable considering all the circumstances.'" Daniels v. State, 650 So.2d 544, 552 (Ala.Cr.App.1994), cert. denied, [514 U.S. 1024, 115 S.Ct. 1375, 131 L.Ed.2d 230 (1995)], quoting Strickland, 466 U.S. at 688, 104 S.Ct. at 2065. "A court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690, 104 S.Ct. at 2066.
"`The claimant alleging ineffective assistance of counsel has the burden of showing that counsel's assistance was ineffective. Ex parte Baldwin, 456 So.2d 129 (Ala.1984), aff'd, 472 U.S. 372, 105 S.Ct. 2727, 86 L.Ed.2d 300 (1985). "Once a petitioner has identified the specific acts or omissions that he alleges were not the result of reasonable professional judgment on counsel's part, the court must determine whether those acts or omissions fall `outside the wide range of professionally competent assistance.' [Strickland,] 466 U.S. at 690, 104 S.Ct. at 2066." Daniels, 650 So.2d at 552. When reviewing a claim of ineffective assistance of counsel, this court indulges a strong presumption that counsel's conduct was appropriate and reasonable. Hallford v. State, 629 So.2d 6 (Ala.Cr.App.1992), cert. denied, 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 491 (1994); Luke v. State, 484 So.2d 531 (Ala.Cr.App.1985). "This court must avoid using `hindsight' to evaluate the performance of counsel. We must evaluate all the circumstances surrounding the case at the time of counsel's actions before determining whether counsel rendered ineffective assistance." Hallford, 629 So.2d at 9. See also, e.g., Cartwright v. State, 645 So.2d 326 (Ala.Cr.App.1994).
"`"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance *206 after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.' There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way."
"`Strickland, 466 U.S. at 689, 104 S.Ct. at 2065 (citations omitted). See Ex parte Lawley, 512 So.2d 1370, 1372 (Ala.1987).
"`"Even if an attorney's performance is determined to be deficient, the petitioner is not entitled to relief unless he establishes that `there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Strickland,] 466 U.S. at 694, 104 S.Ct. at 2068."
"`Daniels, 650 So.2d at 552.
"`"When a defendant challenges a death sentence such as the one at issue in this case, the question is whether there is a reasonable probability that, absent the errors, the sentencer  including an appellate court, to the extent it independently reweighs the evidence  would have concluded that the balance of aggravating and mitigating circumstances did not warrant death."
"Strickland, 466 U.S. at 697, 104 S.Ct. at 2069, quoted in Thompson v. State, 615 So.2d 129, 132 (Ala.Cr.App.1992), cert. denied, 510 U.S. 976, 114 S.Ct. 467, 126 L.Ed.2d 418 (1993).
"`In a Rule 32 proceeding, the petitioner has "the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief." Rule 32.3, Ala.R.Crim.P. See Fortenberry v. State, 659 So.2d 194 (Ala.Cr.App.1994), cert. denied, 516 U.S. 846, 116 S.Ct. 137, 133 L.Ed.2d 84 (1995); Wilson v. State, 644 So.2d 1326 (Ala.Cr.App.1994); Elliott v. State, 601 So.2d 1118 (Ala.Cr.App.1992)."
"Bui v. State, 717 So.2d 6, 12-13 (Ala.Cr.App.1997), cert. denied, 717 So.2d 6 (Ala.1998).
"Moreover, `[a] finding of no plain error is one factor to consider when assessing the performance of counsel.' Fortenberry [v. State], 659 So.2d 194, 200 (Ala.Cr.App.1994), cert. denied, 516 U.S. 846, 116 S.Ct. 137, 133 L.Ed.2d 84 (1995), quoting Hallford [v. State,] 629 So.2d 6, 10 (Ala.Cr.App.1992), cert. denied, 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 491 (1994). `"A finding of no manifest injustice under the `plain error' standard on a direct appeal serves to establish a finding of no prejudice under the test for ineffective assistance of *207 counsel provided in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)."' Williams v. State, 783 So.2d 108, 133 (Ala.Cr.App.2000), quoting State v. Clark, 913 S.W.2d 399, 406 (Mo.Ct.App.1996). See also Thomas v. State, 766 So.2d 860 (Ala.Crim.App.1998)."
Dobyne v. State, 805 So.2d 733, 742-44 (Ala.Crim.App.2000), aff'd, 805 So.2d 763 (Ala.2001).
Each of McGahee's claims is addressed below, in light of the foregoing standards.

A.
McGahee contends that the trial court erred when it concluded that his claim regarding compensation for court-appointed counsel was procedurally barred. He further argues that the trial court's alternative holding, that the claim lacked merit, was erroneous.
Although McGahee argues in his brief to this Court that trial counsel did not raise the issue of inadequate compensation in the context of a claim of ineffective assistance of counsel, we disagree. On June 7, 1991, before McGahee's second sentencing hearing, trial counsel filed a motion styled "Motion for Adequate Compensation For Counsel," in which he asserted that Alabama's compensation of attorneys for indigent defendants violated the Fourteenth Amendment "because the amount is so low that if affects the quality of representation that his attorney can provide." (C. 3790.) Thus, trial counsel clearly did raise this claim, and the Rule 32 court correctly held that the claim was procedurally barred from review, because it was raised at trial and because it could have been, but was not, raised on appeal. Rule 32.2(a)(2) and (a)(5), Ala. R.Crim. P. (C. 763.)
We note, moreover, that McGahee's assertion in his brief on appeal, that the claim had not been raised prior to the Rule 32 proceedings, is disingenuous. In paragraphs 28-35 of McGahee's second amended petition for relief, McGahee argued that trial counsel was ineffective, in part, because of the compensation set forth in § 15-12-21, Ala.Code (1975). Paragraph 30 of that petition stated:
"Mr. McGahee's trial counsel filed an extensive motion requesting adequate compensation for his representation. He readily admitted that his ability to effectively represent Mr. McGahee was contingent on his receiving sufficient funds for adequate investigation, necessary legal research, and to perform other duties required of a lawyer handling a capital case."
(C. 524.)
Because the trial court correctly determined that this claim was procedurally barred from review, we hold that the trial court did not abuse its discretion when it denied the claim.

B.
McGahee argues that the Rule 32 court erred when it denied his claim that trial counsel rendered ineffective assistance when he failed to present evidence to support an intoxication defense. He contends that trial counsel did not fully investigate the circumstances of the offense and uncover evidence of McGahee's intoxication. He asserts that such evidence would have supported a defense that he was incapable of forming the intent to commit capital murder. We disagree.
In his second amended petition, McGahee claimed that counsel should have spoken with the officers involved in McGahee's arrest and with the people who spent time with McGahee in the 24 hours preceding the shooting. He further claimed that trial counsel should have developed "a sufficient relationship" with McGahee so that *208 McGahee had been willing to talk about his alcohol dependence and consumption. (C. 529-530.) At the evidentiary hearing, trial counsel testified that, before the trial, McGahee told him that he had consumed "a couple" of alcoholic drinks before the shooting, but that he did not "in any kind of way" understand McGahee to be claiming that the alcohol influenced his behavior. (R. 40.) "As a result," counsel stated, "I did not make that as an issue, as a major issue for the jury to decide in the first case, because I didn't have anything of any substance." (R. 40.) Counsel testified that, after the first trial and before the second sentencing hearing, McGahee told him that he consumed some quantity of alcohol on the morning of the murder. (R. 41.) Counsel further testified that, at the second sentencing hearing, he questioned the witnesses at the scene about the odor of alcohol, and "they were not supportive." (R. 42.) McGahee's mother testified that she never saw her son consume alcohol, but that she believed he was drinking to excess in the months before the murder. (R. 96-97.) McGahee's brother testified that he did not see McGahee drink alcohol, but he could sometimes smell alcohol on his brother. (R. 145.)
The trial court denied relief on this claim of ineffective assistance. The trial court correctly noted that the police officers testified at trial that McGahee appeared to be calm and not under the influence of alcohol when he was arrested. In the guilt phase of his trial, McGahee testified that he had consumed no hard liquor in the days before the murder, that he had drunk a couple of beers the night before the murder, and that he was not claiming that he had been under the influence of alcohol when he committed the crimes. (TR. 2418, 2448.) As the trial court stated, at his second sentencing hearing, McGahee testified that he had not previously told his attorney and his experts that he had drunk alcohol before he committed the murders. At the second sentencing hearing, McGahee testified, "I did not share with any of these psychiatrists or anybody. The first time it was found out that I was drinking on the day of the crime was when I come and confided right then when Bruce Boynton [defense counsel] asked me." (TR. 3270.) McGahee testified that he did not tell anyone that he had been drinking on the morning of the murder because he had not trusted anyone, not even his mother. (TR. 3274.)
The record demonstrates that additional efforts by counsel to investigate McGahee's drinking and develop an intoxication defense would have been futile. Moreover, the evidence presented at the evidentiary hearing does not establish that McGahee was intoxicated at the time of the murders. McGahee's testimony demonstrates that he deliberately failed to disclose details about his drinking to his attorney and to all of the experts involved in the case until the day he testified at his second sentencing hearing. The record does not support either deficient performance or prejudice.
"`"The absence of any additional evidence can be attributed not to trial counsel but to petitioner and his family. Trial counsel's representation was not deficient simply because petitioner's coram nobis counsel developed some arguably mitigating evidence not presented at trial where trial counsel made a reasonable effort to discover such evidence. Burger v. Kemp, 753 F.2d 930, 938-939 (11th Cir.1985)."'"
Adkins v. State, [Ms. CR-99-0834, August 31, 2001] ___ So.2d ___, ___ (Ala.Crim.App.2001)(opinion on return to remand). As the United States Court of Appeals for the Eleventh Circuit observed in an analogous case: "Counsel cannot be *209 deemed deficient for failing to present additional evidence of mitigation of which they were unaware due to [the defendant's] refusal to assist them in obtaining the information." Sims v. Singletary, 155 F.3d 1297, 1316 (11th Cir.1998). Therefore, we affirm this portion of the trial court's judgment.

C.
McGahee next argues that the lower court abused its discretion when it denied his claim that trial counsel was ineffective because he failed to request an instruction on intoxication and failed to request lesser-included offense instructions based on his intoxication. We disagree. The trial court held that defense counsel was not deficient for failing to request the foregoing instructions because the record contained no evidence to support such instructions. As discussed in the previous section of this opinion, the officers who had contact with McGahee after the murders did not detect the odor of alcohol or believe McGahee was intoxicated. When he spoke to his attorney and to all of the mental health experts, McGahee consistently denied that he had consumed alcohol before the murders. When he testified at his second sentencing hearing, McGahee for the first time claimed that he was intoxicated on the day of the murder. Thus, at the guilt phase of McGahee's trial, no evidence had been presented that would have supported instructions on intoxication or on any lesser-included offense based on intoxication. Trial counsel's performance was not deficient, and McGahee suffered no prejudice. Therefore, McGahee was not entitled to any relief on this claim, and we affirm the trial court's judgment as to this issue.

D.
McGahee argues that trial counsel was ineffective for pursuing a defense that he says was legally unsupported. Specifically, he claims that defense counsel's assertion in opening and closing arguments that Cassandra Lee died as a result of her refusal to accept blood transfusions was unsupported by the facts and the law, because the evidence established that McGahee shot Lee. The trial court held that defense counsel's decision to put forth this defense was a reasonable strategy under the circumstances and that McGahee had failed to prove that he was prejudiced by counsel's actions. We agree.
At the Rule 32 hearing, when asked why he attempted to prove that Cassandra Lee had died as a result of her refusal to accept blood transfusions, defense counsel testified that he was attempting to gain as much sympathy for McGahee as he could possibly get. He stated that one never knows what evidence a jury relies on, and that because the evidence against McGahee was so overwhelming and there was little else to put forth on his behalf, counsel decided to pursue this particular defense. Defense counsel testified that he wanted to present an insanity defense, too, but that he did not know until after the trial began whether his expert's testimony would support that defense. The trial court noted that defense counsel was an experienced criminal attorney who had tried hundreds of felony jury trials. The court found that, based on defense counsel's testimony, the decision to pursue an intervening-cause-of-death defense was a reasonable strategic decision in this case. The trial court further determined that McGahee had failed to establish that he was prejudiced by counsel's performance.
Alabama courts have reached the same decision under nearly identical circumstances. In Ex parte Duren, 590 So.2d 369 (Ala.1991), the Alabama Supreme Court considered defense counsel's decision to put forth a legally invalid defense *210 based on the doctrine of transferred intent. The Supreme Court rejected Duren's claim that trial counsel rendered ineffective assistance when he relied on the doctrine of transferred intent, even though the trial court instructed the jury on the invalidity of the transferred-intent defense. That Court quoted from the trial court's findings regarding defense counsel's putting forth the defense because the evidence against Duren was overwhelming, and because a verdict based on the defense would have benefitted Duren. The Court then stated:
"We agree with the trial court that [defense counsel's] decision was not unreasonable under all the [attendant] circumstances; consequently, we agree that Duren has not shown that counsel was ineffective in this regard. He was trying to make the most of a bad situation for his client."
Ex parte Duren, 590 So.2d at 373.
The Court also determined that Duren had failed to establish the prejudice prong of the Strickland test:
"We cannot say that [defense counsel] was unreasonable in choosing to handle Duren's trial in the way he did. We certainly cannot say that there is a reasonable probability that the result of the trial would have been different had [counsel] presented a defense other than the one he chose to present. Therefore, we hold that Duren did not receive ineffective assistance of counsel at his trial."
Ex parte Duren, 590 So.2d at 374.
Based on the circumstances presented here, and in reliance on the Alabama Supreme Court's decision in Ex parte Duren, we affirm the trial court's denial of McGahee's claim for relief.

E.
McGahee next argues that trial counsel was ineffective because he failed to object to numerous instances of prosecutorial misconduct. He claims that counsel should have objected and requested a curative instruction after the prosecutor informed the jury that McGahee was presumed guilty because an indictment had been issued against him; that counsel failed to adequately challenge the prosecution's exclusion of African-Americans and women from the jury venire; and that counsel failed to object to numerous guilt-phase arguments. The trial court examined each of the allegations and found them to be meritless. We have reviewed each of the instances of prosecutorial misconduct alleged by McGahee and we have reviewed the portions of the trial record relating to the claims raised. We agree with the trial court that McGahee failed to establish deficient performance and prejudice as to each of the claims. We adopt the trial court's findings and affirm the trial court's denial of these claims for relief.

F.
McGahee next argues that the trial court erred in denying his claim alleging that counsel failed to object to improper jury instructions. Specifically, he contends that the court's instruction on reasonable doubt was erroneous and objectionable; that the instruction on the burden of proof with regard to insanity was improper and should have been objected to; that counsel should have objected to the trial court's repeated referenced to McGahee's prior criminal behavior; and that counsel should have objected to the court's instruction that the jury was not to consider sympathy during its deliberations. The trial court rejected McGahee's claims and determined that counsel was not ineffective because the jury instructions were proper and correct statements of the law. We have reviewed McGahee's *211 claims and the trial court's instructions to the jury. We agree with the trial court that the jury instructions were proper and that counsel was not ineffective for failing to object to the instructions. The trial court correctly denied this claim for relief.

G.
McGahee next argues that the trial court erred when it denied him relief on his claim alleging that trial counsel rendered ineffective assistance when he failed to adequately present the motion for a change of venue. Specifically, he argues that counsel failed proffer all available evidence to support a change of venue and failed to put forth any legal support for the motion. The trial court rejected McGahee's postconviction claim, finding that trial counsel fully litigated the motion seeking a change of venue, presented several witnesses, and argued the merits of the motion. The court further noted that counsel conducted extensive voir dire questioning of potential jurors to determine whether any of them had opinions regarding McGahee's guilt based on any pretrial publicity, and successfully challenged some of the jurors based on their responses. Finally, the trial court stated that a change of venue is not due to be granted merely because prospective jurors had heard about the case. To the contrary, the court stated, the relevant question is whether the community was saturated with prejudicial pretrial publicity or whether there existed actual prejudice against the defendant. We agree with the trial court's analysis and conclusion as to this claim.
On appeal, McGahee argues that trial counsel's presentation of "the anemic motion for a venue change" deprived him of a fair trial before impartial jurors. We have reviewed the trial record, including the exhibits submitted by defense counsel and the extensive hearing held on the motion for a change of venue. We have also reviewed the voir dire questioning of the prospective jurors and their responses to questions regarding pretrial publicity. We agree with the trial court's discussion of the legal principles as they apply to the facts of this case. Specifically, we note that the existence of widespread publicity does not require a change of venue. A defendant must establish actual prejudice or prove that the community was saturated with prejudicial publicity. Parris v. State, [Ms. CR-00-0406, Nov. 22, 2002] ___ So.2d ___, ___ (Ala.Crim.App.2001) (opinion on return to remand). We agree with the trial court that McGahee has failed to establish that trial counsel could have sustained this burden of proof, but failed to do so as a result of his deficient performance. Moreover, as the trial court correctly held, McGahee has failed to establish that he was prejudiced by counsel's performance. Therefore, we affirm the trial court's denial of this claim of error.

H.
McGahee next argues that counsel rendered ineffective assistance because, he argues, counsel failed to remove from the jury veniremembers whose views "were antithetical to fairness and impartiality." (McGahee's brief at 46.) Specifically, he argues that counsel should not have allowed Juror L.C. to sit on the jury because during voir dire questioning he stated that he believed that McGahee was probably guilty of the offense. The trial court rejected McGahee's claim of error, noting that the transcript of the voir dire questioning indicates only that Juror L.C. stated that he could approach the case with an open mind and base his verdict on the evidence presented in court. The record supports the trial court's findings. Moreover, *212 McGahee presented no evidence at the hearing to demonstrate that Juror L.C. was biased against him or that trial counsel's performance was deficient for failing to have L.C. removed from the panel. We affirm the trial court's denial of relief as to this claim.

I.
McGahee next argues that trial counsel rendered ineffective assistance when he failed to "adequately object" when the trial court granted the State's motion to strike veniremembers from the jury based on their responses to questions regarding the death penalty. The trial court denied this claim for relief, finding that counsel did, in fact, object on constitutional grounds to the court's removal of the prospective jurors from the panel. The court further stated that the transcript of voir dire questioning established that the prospective jurors indicated that they were unalterably opposed to the imposition of the death penalty, which is a legitimate ground for removing veniremembers from a jury panel. Moreover, the court noted that McGahee received a new sentencing hearing with a new jury, and that McGahee could not establish any prejudice as to the penalty phase as a result of his attorney's actions as to the members of the first venire. We agree with the trial court.
McGahee received a new sentencing hearing as a result of his direct appeal following his conviction and death sentence. Therefore, he cannot establish that he suffered any prejudice in the first sentencing hearing as a result of the trial court's actions regarding removal of veniremembers. Furthermore, the record reflects that the veniremembers struck on the basis of their beliefs regarding the death penalty stated, often more than once, that they could not vote to impose the death penalty under any circumstances. After the State moved to strike the veniremembers, defense counsel made an extensive argument in opposition to the motion, citing Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). When the trial court granted the State's motion to strike those veniremembers, defense counsel objected again. The trial court then stated that each of the veniremembers struck had unequivocally said that he or she could not return a death-penalty verdict under any circumstances.
As the trial court correctly determined in its order denying postconviction relief, defense counsel adequately objected to the State's motion to strike the veniremembers, and the trial court properly granted the State's challenges for cause. McGahee failed to establish deficient performance or prejudice. Therefore, we affirm the trial court's denial of this claim for relief.

J.
McGahee argues also that counsel was ineffective because, he says, counsel failed to adequately argue for the removal of several jurors for cause on grounds that the jurors were unfit to serve on his jury. He contends that veniremember M.C. had a fixed opinion about his guilt and that veniremember H.O. was related to members of the district attorney's office and that he had been exposed to pretrial publicity. The trial court denied the claim. The court stated that M.C. indicated during voir dire questioning that she could follow the court's instructions and base her verdict only on the evidence presented at trial. The court further found that veniremember H.O. was the father-in-law of a county prosecutor who was not involved in McGahee's case. The court concluded that the challenges for *213 cause as to those veniremembers were correctly denied, and that McGahee had failed to establish deficient performance or prejudice. We agree with the trial court.
Veniremember M.C. initially acknowledged that she had formed an opinion as to McGahee's guilt, but upon further questioning, she stated that she could ignore the information she had previously received and decide the case based only on the evidence presented at trial. She further stated that she understood that McGahee was presumed innocent until proven guilty, and stated that she could apply that presumption to McGahee. A veniremember need not be excused unless he or she is unable to set aside information obtained from sources outside the jury trial. Tomlin v. State, [Ms. CR-98-2126, May 31, 2002] ___ So.2d ___ (Ala.Crim.App.2002). Veniremember H.O. stated that he was the father-in-law of a prosecutor in the district attorney's office. That attorney was not involved in McGahee's prosecution, and Alabama law did not require that H.O. be excused on that ground. § 12-16-150(4), Ala.Code (1975). The trial court did not abuse its discretion in denying McGahee's challenges for cause. Tomlin, supra. Therefore, defense counsel was not deficient for failing to have the trial court remove the veniremembers from the jury for cause. Moreover, as the trial court correctly noted, defense counsel exercised peremptory challenges to remove M.C. and H.O. from the jury.
McGahee failed to establish deficient performance or prejudice as a result of counsel's actions. The trial court correctly denied McGahee's claim for relief, and we affirm the court's judgment on this issue.

K.
McGahee argues that trial counsel "was extraordinarily ineffective" during his opening and closing arguments to the jury. He claims, specifically, that counsel's performance was deficient because he argued a legally and factually impossible defense  that McGahee was not responsible for Cassandra Lee's death. He also claims that counsel argued, for the first time in his closing argument to the jury, that McGahee was incapable of forming the intent to commit capital murder. Thus, he argues, the failure to present during his opening argument "the only viable defense theory forwarded at trial epitomizes ineffectiveness." (McGahee's brief at p. 49.) The trial court determined that, because trial counsel testified at the Rule 32 hearing that he did not know until after the trial had begun whether his expert would testify in support of an insanity defense, counsel's decision not to mention the defense until closing did not constitute deficient performance. The trial court did not address McGahee's assertion that counsel was ineffective for presenting a factually and legally impossible defense during opening argument because McGahee did not argue this claim. (C. 791 n. 9.)
The trial court correctly held that counsel was not ineffective for failing to argue an insanity defense in opening argument, because counsel did not know at that time whether his expert witness would testify in support of that defense. (R. 50.) If trial counsel had raised this defense in his opening argument and had then been unable to support the defense with testimony from his expert, McGahee would arguably have suffered some prejudice as a result. We find no deficient performance or prejudice under the circumstances presented here, and we affirm the trial court's denial of relief as to this claim.
Although the trial court did not address the second portion of McGahee's claim  that counsel was ineffective for arguing a factually and legally unsupportable defense  because, the court found, McGahee *214 only listed the claim in the issue heading in his petition, we disagree with the trial court. In paragraph 59 of McGahee's second amended petition, he argued, "As detailed supra, counsel followed a legally and factually impossible defense ..., arguing that Mr. McGahee did not cause the death of Ms. Lee." (C. 538-39.) We found, in part III.D. of this opinion, however, that trial counsel did not render ineffective assistance when he presented this defense to the jury. Therefore, counsel did not render ineffective assistance when he argued this defense to the jury in his opening and closing statements. The trial court's denial of relief is affirmed. See Robinson v. State, 865 So.2d 457, 468 (Ala.Crim.App.2003)(If the trial court is correct for any reason, even though it may not be the reason offered by the court, this Court will not reverse its denial of the petition.).

L.
McGahee argues that trial counsel failed to object to the admission of photographs of Dee Ann Duncan, one of the victims, and failed to object to other allegedly irrelevant and inflammatory photographs presented at trial, specifically, photographs of the victims' bodies. The trial court denied the claim, finding that defense counsel had objected to the photograph of Connie Brown's body, and that the objection was overruled. The court also found that McGahee did not question defense counsel about his failure to object to the photographs of Dee Ann Duncan, and that this claim of error was therefore unsupported. Finally, the court determined that the photographs of the victims' bodies were properly admitted, and that McGahee had failed to establish that he suffered any prejudice as a result of defense counsel's failure to object to their admission.
We agree with the trial court's analysis of the claims raised in this portion of McGahee's petition. We note, specifically, that Alabama courts have held on many occasions that photographs of the crime scene and the victims are admissible, even though they might be gruesome and cumulative, if they shed light on an issue being tried. E.g., Baird v. State, 849 So.2d 223, 246 (Ala.Crim.App.2002). The trial court correctly held that McGahee failed to establish deficient performance or prejudice with regard to the admission of the photographs. Therefore, we affirm the trial court's denial of this claim.

M.
The next claim before us is whether trial counsel rendered ineffective assistance for failing to challenge the introduction of statements McGahee made before he was informed of his rights pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602 (1966). McGahee asserts that, if counsel had objected properly to these statements, they would not have been introduced into evidence and he would not have been convicted or, in the alternative, he would not have received the death sentence. The trial court rejected this claim, finding that McGahee presented no evidence at the Rule 32 hearing to support this allegation of error. The trial court also held that trial counsel did challenge the admissibility of the statements; that McGahee had made some incriminating statements spontaneously before he was taken into custody; and that the prosecution had established that the Miranda rights were read to McGahee as soon as he was taken into custody. The trial court's analysis and conclusions are correct.
Outside the jury's presence, the trial court considered testimony to determine whether McGahee's statements were admissible. The prosecution presented evidence indicating that, immediately after McGahee was taken into custody, his Miranda *215 rights were read to him. McGahee was not questioned at that time. While he was being transported to the police station from the junior college where the shooting occurred, McGahee volunteered the following statement: "Well, if the son of a bitch does live, it ain't my fault because I gave her a free ticket to heaven." (TR. 649.) The police officer testified that McGahee made a similar statement while he was in the booking room of the station. McGahee also stated that the situation had not worked out as he had planned, that "the bitch" would not leave the room, so he "started busting caps," and that if he had taken all of his ammunition into the classroom, the police would not have taken him alive. (TR. 650.) McGahee testified that the Miranda rights were not read to him at the scene or in the booking room. He denied any knowledge of the statements that, according to the prosecution witness, he made spontaneously after he was taken into custody. Defense counsel then argued that the statements should not be admitted because there had not been an adequate showing that McGahee had been informed of his Miranda rights in a timely manner and before he made any statements. The trial court overruled the objection and allowed the statements into evidence.
Clearly, defense counsel objected to the admission of the statements on the same ground raised by postconviction counsel, and presented McGahee's testimony in an attempt to support the suppression of the statements. There is no testimony in the record before us indicating that counsel's performance was deficient in his attempts to exclude the statements, and McGahee has not demonstrated that he was prejudiced by counsel's efforts. The trial court's denial of this claim is due to be affirmed.

N.
McGahee argues that trial counsel was ineffective for failing to challenge the qualifications of two of the State's witnesses who testified as experts. The trial court denied this claim, finding that McGahee failed to present any evidence to support it. We agree. Although trial counsel testified at the Rule 32 hearing, he was not questioned about his decision to accept the witnesses' qualifications. There being no evidence before the trial court to support this bare allegation, the claim was correctly denied. McGahee is not entitled to any relief on this claim.

O.
McGahee next argues that trial counsel was "grossly ineffective" because he presented McGahee as a witness during the guilt phase of trial. Specifically, McGahee argues that his testimony was incriminating and directly harmful to his case. The trial court rejected the claim, finding that trial counsel had consulted with McGahee and had made a strategic decision to put McGahee on the stand in an attempt to elicit sympathy from the jury and to give him the opportunity to explain to the jury the stressors he was under at the time of the offense. McGahee appeals from the trial court's denial of this claim for relief.
Trial counsel testified at the Rule 32 hearing that, after talking to McGahee, he decided as a matter of trial strategy that McGahee should testify at trial. He thought McGahee's testimony would make a difference, and he also hoped McGahee would elicit some sympathy from the jury. Trial counsel discussed with McGahee the general areas he intended to cover during the testimony, and he explained what he wanted from McGahee in his testimony. Counsel stated that McGahee was hostile on the witness stand and that McGahee's *216 attitude surprised him. Finally, defense counsel testified that he questioned McGahee about a prior conviction to minimize its prejudicial effect and to present it as part of the stress McGahee was under before he committed the crime.
Based on our review of the record, we cannot find that the trial court abused its discretion when it denied relief on this claim. The only evidence presented at the Rule 32 hearing indicates that defense counsel made a strategic decision to put McGahee on the stand; this decision was based on his appraisal of the case and on his discussions with McGahee about the questions he would ask McGahee. The record supports a finding of neither deficient performance or prejudice. Hallford v. State, 629 So.2d 6 (Ala.Crim.App.1992). Trial counsel was faced with the daunting task of representing a defendant who had, arguably, insurmountable evidence against him. Particularly in cases such as this one, in the absence of evidence that the decision was anything other than a reasonable defense strategy based on the circumstances of the case, we defer to counsel's strategic decisions. We affirm the trial court's denial of this claim.

P.
McGahee argues that the trial court erred when it denied relief on his claim that trial counsel was ineffective for failing to cross-examine Dee Ann Duncan because, he says, effective cross-examination would have established that he had not sexually abused any of the victims. The trial court held that McGahee had failed to present any evidence to support this claim. We agree. At the Rule 32 hearing, McGahee did not question counsel about the decision to forgo cross-examination of Duncan. Furthermore, he did not offer any evidence from Duncan, so he failed to establish that cross-examination of Duncan at trial would have shown that McGahee had not sexually abused the victims. The trial court did not abuse its discretion when it denied this claim.

Q.
McGahee argues that his trial attorney was "completely ineffective to pursue an insanity defense," and that he should not have called the members of the Lunacy Commission to testify. (McGahee's brief at p. 57.) He further argues that his attorney pursued a defense for which, at the outset of trial, he had no evidence. The trial court denied the claim after determining that defense counsel was able to obtain some favorable information from the State psychiatrists, and that the testimony was consistent with the testimony of his expert. The court also found that McGahee failed to establish that he suffered any prejudice.
At the Rule 32 hearing, trial counsel testified that he presented an insanity defense because that was the only defense that could be supported. He stated that after the court approved funds to retain a psychiatrist he contacted three experts and found they were unavailable. The third psychiatrist referred him to Dr. Elizabeth Sapala, who testified at trial. Counsel testified that Dr. Sapala was "sympathetic to Mr. McGahee," but he did not know until the day of trial whether she would testify in support of his insanity defense. (R. 50.) Although Rule 32 counsel states in his brief on appeal that "shockingly" defense counsel did not know until the middle of trial whether Dr. Sapala would testify in favor of his defense (McGahee's brief at p. 58), the record does not establish that this delay was due to any deficient performance by trial counsel. To the contrary, his testimony at the hearing suggests that the delay was due to the unavailability of experts to testify on *217 McGahee's behalf and to Dr. Sapala's late filing of her report.[4]
Faced with these circumstances, trial counsel spoke with the State psychiatrists who had examined McGahee. He testified at the hearing that he believed that he could elicit testimony from them that would be useful to his defense. As the trial court noted in its order denying Rule 32 relief, trial counsel was able to elicit testimony from State psychiatrists about McGahee's difficult past, which allowed him to argue to the jury that the stress McGahee experienced caused him to commit this crime.
Defense counsel also elicited testimony from a member of the Lunacy Commission, Dr. Omar Mohabbott, that he was unaware that the trial court order had directed him to evaluate whether McGahee had been sane at the time of the crime. Dr. Mohabbott stated that he evaluated only McGahee's competency to stand trial. (TR. 2247-48.) Dr. Kamal Nagi, another Lunacy Commission member who evaluated McGahee, testified that at the time of the crime, McGahee was suffering from stresses due to his divorce and family conflict. Dr. Nagi stated that McGahee had also experienced stress because of being in jail and because of his financial difficulties. (TR. 2291-92.) Dr. Nagi testified about McGahee's unstable childhood and about the problems in his marriage to Connie. (R. 2293-95, 2302, 2304.) Dr. Nagi and Dr. Tulao, the third member of the Lunacy Commission, testified as to their clinical findings that McGahee was sane at the time of the crime. After the psychiatrists testified, defense counsel made a motion for a mistrial and argued that McGahee was denied a competent evaluation as ordered by the trial court. He specifically mentioned Dr. Mohabbott's failure to comply with the order and to determine whether McGahee was sane at the time of the crime. (TR. 2333-37.) The trial court denied the motion.
To the extent McGahee now argues that trial counsel was ineffective for putting forth an insanity defense, we find that the trial court correctly rejected this claim. Trial counsel testified at the Rule 32 hearing that he presented an insanity defense because that was the only defense that could be supported and that he found a psychiatrist who was sympathetic toward McGahee. This was a reasonable strategic decision for counsel to make at the time, based on his evaluation of the case and on the overwhelming evidence against his client.
We next examine McGahee's claim that trial counsel was ineffective for calling to the stand the State's psychiatrists who, McGahee claims, presented damaging testimony adverse to his insanity defense. Without deciding whether trial counsel's performance was deficient, we find that the trial court correctly denied relief on this claim because McGahee failed to establish prejudice. McGahee, himself, characterizes the testimony of his trial expert, Dr. Sapala, as "anemic and factually and legally unsupported." (McGahee's brief at p. 58.) In a section of his brief to this Court addressing another issue, McGahee argues that the "insanity defense ... was utterly lacking supportive evidence." (McGahee's brief at p. 62.) McGahee argues to this Court that an insanity defense could not have been presented in such a manner as to result in his acquittal. Therefore, any alleged error in trial counsel's pursuit of that defense, such as calling *218 the State's psychiatrists to testify, cannot have resulted in any prejudice to McGahee. Because McGahee failed to establish the prejudice prong of the Strickland test, the trial court correctly denied his claim for relief. The court's judgment as to this claim is due to be affirmed.

R.
McGahee next argues that the trial court erred when it denied his claim that trial counsel was ineffective for presenting evidence of McGahee's prior arrests and convictions. In an unrelated argument, he claims that counsel erred in not objecting to the Dee Ann Duncan's testimony because, he says, the testimony was unrelated to the crimes for which he was on trial. The trial court denied the claims, noting that defense counsel testified at the Rule 32 hearing that he presented evidence of the prior convictions during his direct examination of McGahee in order to demonstrate the stressors McGahee experienced and also to lessen the impact of evidence by giving McGahee an opportunity to explain it to the jury. This was a strategic decision properly left to defense counsel's determination. We find no abuse of discretion in the trial court's denial of this claim of ineffective assistance.
As for trial counsel's failure to object to Dee Ann Duncan's testimony, McGahee presented no evidence to support this claim. McGahee has, therefore, failed to overcome the strong presumption that defense counsel's conduct was reasonable. Chandler v. United States, 218 F.3d 1305, 1314 n. 15 (11th Cir.2000)(en banc). Furthermore, as the trial court correctly stated in its order, Duncan's testimony was admissible as part of the res gestae of the capital murder.
The trial court's decisions as to these claims are affirmed.

S.
McGahee argues that trial counsel rendered ineffective assistance because he failed to file a motion requiring the State to demonstrate the existence of probable cause or exigent circumstances justifying seizure of a blood sample from McGahee. He claims that had counsel objected, the evidence would have been excluded and the State's case would have been substantially weaker. The trial court denied the claim, finding that McGahee presented no evidence on the claim at the Rule 32 hearing and that he failed to overcome the presumption that trial counsel acted reasonably. The court further noted that McGahee had failed to cite a page from the trial transcript demonstrating that the evidence was admitted at trial. We agree with the trial court's findings. Nothing in the record before us indicates that trial counsel's performance was deficient or that McGahee suffered any prejudice. The trial court did not abuse its discretion when it denied this claim.

T.
The next claim McGahee raises is that trial counsel was ineffective for failing to restrict what he claims was the irrelevant testimony of Dee Ann Duncan. The trial court denied the claim because McGahee failed to present any evidence in support of it and because the testimony was properly admitted as part of the res gestae of the crime. We agree with the trial court.
Dee Ann Duncan testified at trial about McGahee's actions on the day of the shooting. As part of this testimony about the events, Duncan testified that McGahee came to the place in the classroom where she had fallen and he rubbed between her legs; he also struck her with a gun and his fists until she lost consciousness. McGahee's assault on Duncan was part of the *219 single criminal transaction in this case, and her testimony was therefore admissible. E.g., Hall v. State, 820 So.2d 113, 134 (Ala.Crim.App.1999), aff'd, 820 So.2d 152 (Ala.2001). Trial counsel had no grounds on which to object to Duncan's testimony. McGahee presented no evidence on this issue at the Rule 32 hearing, so he failed to prove that counsel's performance was deficient or that he was prejudiced in any way. The trial court correctly denied relief on this claim.

U.
McGahee claims that counsel was ineffective for failing to adequately investigate and present a defense based on intoxication, and instead presented an invalid defense based on insanity and on the assertion that one of the decedents died because she refused a blood transfusion. The State argues that this claim should not be addressed because it was not raised in the amended Rule 32 petition or at the hearing. In paragraphs 40-42 of the second amended petition, McGahee alleged that trial counsel failed to adequately develop a defense based on his alcohol dependency. The trial court addressed the intoxication-defense claim in its order, and we have discussed this claim previously, in part II. B. of this opinion.
To the extent McGahee is arguing that counsel was ineffective for presenting as a defense that Cassandra Lee died as a result of her refusal to undergo a blood transfusion, that claim was decided adversely to McGahee by the trial court, and this Court addressed the claim in part II. D. of this opinion.
Our previous analysis and discussion of these claims has adequately addressed the claims raised in subsection U of McGahee's brief to this Court. McGahee raises nothing new, and we will not further address the claims here.

V.
McGahee's final argument regarding the alleged ineffective assistance of counsel at the guilt phase of his trial is that the cumulative effect of counsel's errors denied him the effective assistance of counsel. The trial court stated that it would not consider the claim because it had not been raised in the second amended petition. The court stated, furthermore, that the claim had no merit because there had been no single instance of ineffective assistance of counsel and there could therefore be no cumulative error.
The trial court correctly found that McGahee's cumulative-error argument was not properly before it because the claim had not been raised in the second amended petition. Furthermore, the State correctly argues in its brief to this Court that, although McGahee presented this argument in his post-hearing brief, that presentation was not, as McGahee argues, equivalent to an amendment to the petition pursuant to Rule 32.7, Ala. R.Crim. P. McGahee's argument that he could not have presented this claim until after the evidence had been presented at the evidentiary hearing is specious. McGahee's second amended petition contained dozens of claims and subclaims, none of which could be proven until evidence was taken. The "cumulative-error" claim could have been included in the petition along with the claims McGahee raised in his petition.
Moreover, we agree with the trial court's alternative holding on the merits. Even if the claim had been presented in the petition, McGahee would not be entitled to any relief because he failed to establish even a single instance of deficient performance. As the Alabama Supreme Court has stated, "when no one instance amounts to error at all (as distinguished from error not sufficiently prejudicial to be *220 reversible), the cumulative effect cannot warrant reversal. In other words, multiple nonerrors obviously do not require reversal." Ex parte Ferguson, 814 So.2d 970, 980 (Ala.2001)(Johnstone, J., concurring specially). Because we have found no error in trial counsel's performance, we would find no cumulative error. We therefore affirm the trial court's denial of relief on this claim.

W.
In conclusion, we find that the trial court correctly denied McGahee relief on each of his claims that his trial counsel's representation during the guilt phase of the trial was ineffective.

IV.
In Issue III of his brief to this Court, McGahee argues that trial counsel rendered ineffective assistance during the penalty phase of his trial. The trial court addressed each specific claim of deficient performance McGahee raised and denied McGahee's request for relief. For the reasons discussed below, we find no abuse of discretion in the trial court's decision with regard to this issue.

A.
McGahee argues that trial counsel rendered ineffective assistance when he failed to present any testimony at the sentencing hearing before the trial judge from his family members, childhood friends, and community members who knew him, and whose testimony would have provided additional mitigating evidence. He contends that if such evidence had been presented to the trial court, the trial court would not have overridden the jury's recommendation that McGahee be sentenced to life imprisonment without parole. The trial court denied McGahee's claim and, in its order denying relief on this claim, the court discussed in detail the evidence and its rationale for the decision.
At the evidentiary hearing, McGahee presented the testimony of some of his family members regarding their love for him and the impoverished conditions in which he was raised. Other witnesses testified about McGahee's attendance at church as a child and that he continued practicing religion during his incarceration. In its order denying relief on this claim, the trial court noted that at McGahee's resentencing hearing, trial counsel presented substantial evidence in mitigation, including evidence about McGahee's impoverished childhood, the death of his father, his military career, and his religious experience in prison. The court noted that two mental health experts testified about McGahee's dependence on alcohol and the resulting effects on McGahee's behavior. Also at the resentencing hearing, a prison guard testified on McGahee's behalf and stated that McGahee frequently studied his Bible and that he shared his knowledge of the Bible with others in the prison. The Rule 32 court stated in its order that, after the second sentencing hearing was held, the jury recommended by a vote of 10-2 that McGahee be sentenced to life imprisonment without parole. The court noted that McGahee received from the jury the best sentencing recommendation that he could have received. The court further stated that, at the resentencing proceeding, it had considered the evidence presented and had determined that the aggravating circumstances outweighed the mitigating circumstances, and it imposed a sentence of death.
The court discussed in detail the evidence presented at the Rule 32 hearing and the evidence presented at McGahee's resentencing hearing. The court concluded that most of the evidence presented at the Rule 32 hearing in support of this *221 claim was cumulative to evidence presented at the second sentencing hearing. The court further stated that, even if the evidence had been presented at the resentencing hearing, the court would have given it little or no weight. The court explained, for example, that evidence of McGahee's family members' love for him and of McGahee's supportiveness of his family would have been considered along with testimony that McGahee's family members had evicted him from their homes and had telephoned the police and had him arrested, and that he had stolen his mother's vehicle on the day of the murder because he was angry at being evicted from her home. The trial court also discussed that the testimony about McGahee's religiosity would have been largely cumulative to the testimony presented at trial.
The Rule 32 court concluded that McGahee had failed to establish deficient performance by trial counsel or prejudice as a result of counsel's performance. The court stated that the fact that trial counsel obtained a life-without-parole recommendation from the jury established that McGahee received an adequate penalty-phase defense. The court further stated that it had reviewed the evidence presented at the Rule 32 hearing and was still of the opinion that the death penalty was appropriate in this case.
Postconviction claims that defense counsel should have conducted further investigation and presented additional evidence in mitigation are not uncommon in capital-murder cases. We have previously stated:
"`There has never been a case where additional witnesses could not have been called. The appellant presented relatives and personal friends who, upon interview, were found to testify on his behalf. We refuse to set a standard that a court may be reversed because it did not hear unoffered testimony from still more friends and relatives. We also refuse to say that a member of the bar is guilty of ineffectiveness for not calling every witness and friend who was willing to testify. To hold otherwise would clog an already overburdened system with repetitious testimony. The appellant has failed to satisfy either prong of the Strickland test.'
"State v. Tarver, 629 So.2d 14, 21 (Ala.Crim.App.1993), cert. denied, 511 U.S. 1078, 114 S.Ct. 1664, 128 L.Ed.2d 380 (1994)."
Williams v. State, 783 So.2d 108, 118 (Ala.Crim.App.2000).
We have held, "Also, counsel does not necessarily render ineffective assistance simply because he does not present all possible mitigating evidence." Id. at 117.
Trial counsel could have called more witnesses at the penalty-phase hearing before the trial judge, with the hope that the additional information would have convinced the trial judge to agree with the jury's recommendation and to sentence McGahee to life imprisonment without parole.[5] The same can be said after any sentencing hearing in a capital case in which a death sentence is imposed after the jury recommended a sentence of life imprisonment without parole. However, counsel at the Rule 32 hearing did not ask trial counsel any questions about his reasons for not calling the additional witnesses to testify. Because he has failed to *222 present any evidence about counsel's decisions, we view trial counsel's actions as strategic decisions, which are virtually unassailable. Key v. State, [Ms. CR-99-0220, March 1, 2002] ___ So.2d ___ (Ala.Crim.App.2002). Furthermore, as the Rule 32 court noted, counsel did present evidence of McGahee's military record and of his religious conversion, and that evidence was found to be mitigating and was weighed against the aggravating circumstances. Moreover, the trial judge who presided over McGahee's second sentencing proceeding was the judge who presided over the Rule 32 proceedings, and the judge stated that, even if the additional proposed mitigation evidence had been presented at the sentencing hearing, the evidence would have failed to convince the court that the aggravating circumstances did not outweigh the mitigating circumstances. Clearly, McGahee has failed to establish the prejudice prong of the Strickland test, and he cannot, therefore, prevail on this claim.[6]
"Because Dill has not shown that any additional evidence would have changed the trial court's decision at sentencing, we agree with the trial court's ruling that trial counsel did not render ineffective assistance with regard to the investigation and presentation of mitigating evidence during the sentencing phase of Dill's trial."
Dill v. State 767 So.2d 366, 372 (Ala.Crim.App.1999).
For the foregoing reasons, we find no abuse of the trial court's discretion and we affirm the trial court's decision to deny McGahee relief on this claim. Trial counsel's performance at the resentencing hearing was not deficient, and McGahee failed to establish that he suffered any prejudice as a result of counsel's actions.

B.
McGahee next argues that trial counsel's performance was deficient because, he says, counsel failed to effectively present to the jury and to the judge evidence that McGahee could not manage the stress of his relationship with Connie and that he responded to the stress by abusing alcohol. He claims that counsel should have presented witnesses in addition to the experts he did present, to corroborate the experts' testimony. McGahee argues also that counsel should have presented evidence that McGahee was intellectually impaired. The trial court rejected all of the claims. First, the court found that counsel presented abundant evidence in mitigation at the second sentencing hearing, including two mental health experts and McGahee, himself. Second, the court noted that the jury recommended that McGahee receive a sentence of life imprisonment without parole and that McGahee received the best result he could have received from the jury. Third, the court found that trial counsel presented the evidence about the stressors McGahee experienced; about McGahee's inability to cope with those stressors; and about his alcohol abuse and its effect on his behavior. Finally, the court found that newly presented evidence indicating that McGahee functioned in the low average range of intelligence was not mitigating. The court concluded that McGahee failed to prove either that trial counsel was deficient or that he was prejudiced. The court also stated that it remained convinced, even after evaluating *223 the evidence presented at the Rule 32 hearing, that death was the proper sentence in the case.
On appeal, McGahee cites numerous cases for the proposition that counsel can be found ineffective for failing to present evidence of McGahee's substance abuse, low IQ, and emotional problems. He argues: "Had counsel effectively presented this evidence, the jury and the sentencing authority would have viewed Mr. McGahee's actions as a tragic outcome of numerous diverse circumstances, creating an explosive outburst that tragically led to Mr. McGahee's capital trial." (McGahee's brief at p. 96.) McGahee's argument seems to ignore the fact that the jury returned a recommendation of life imprisonment without parole. McGahee also seems to ignore the fact that trial counsel presented much of the evidence that Rule 32 counsel now argues should have been presented. This is not a case in which the jury and judge heard no evidence in mitigation. As the trial court noted, the fact that Rule 32 counsel would have presented the evidence differently or would have presented other evidence in an attempt to prove the same mitigating circumstances does not establish ineffective assistance of counsel. "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." Strickland v. Washington, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
We find no abuse of discretion in the trial court's findings of fact or conclusions of law on this claim. Trial counsel presented substantial evidence in mitigation and the jury returned with the lesser of the two available sentencing recommendations. The Rule 32 court determined that the additional evidence presented at the hearing was either cumulative of evidence presented at the second sentencing hearing or it was not mitigating. The court further stated that it remained convinced that death was the proper sentence. McGahee has failed to prove deficient performance or prejudice. We affirm the trial court's denial of this claim for relief.

C.
McGahee's next claim on appeal is that trial counsel failed to present "adequate evidence" that McGahee was a model prisoner while he was incarcerated. He argues that documentary evidence of his good adjustment on death row would have had a powerful effect on the jury and on the judge. The Rule 32 court denied this claim, finding that trial counsel had called a prison guard at the second sentencing hearing and that the guard had testified that McGahee appeared to have had a religious conversion and that McGahee appeared to be sincere in his beliefs. As the court noted, and as this Court has noted in preceding portions of this opinion, the jury recommended that McGahee receive a sentence of life imprisonment without parole. Therefore, McGahee's claim that admission of the prison records would have affected the jury's decision is meritless.
In its sentencing order, the trial court found McGahee's religious conversion to be a mitigating circumstance. In its evaluation of the prison records presented at the Rule 32 hearing, the court stated that McGahee's status as a model prisoner was not mitigating in light of the crime McGahee committed, and further stated that it continued to believe that death was the appropriate sentence for McGahee. Because McGahee failed to establish that the result of the proceeding would have been different if the prison records had been admitted at the second sentencing hearing, he has failed to prove that counsel was ineffective. We find no abuse of discretion *224 with regard to the trial court's determination that the failure to introduce the prison records into evidence did not constitute ineffective assistance of counsel.
For the foregoing reasons, we affirm the trial court's denial of McGahee's claim for relief.

D.
McGahee argues that trial counsel failed to develop a strategy to secure a sentence of life imprisonment without parole. The State argues that this claim is not properly before us because it was not presented in the Rule 32 petition or at the evidentiary hearing. We agree with the State. Claims not presented in the Rule 32 petition cannot be raised on appeal. E.g., Sims v. State, 869 So.2d 1181 (Ala.Crim.App.2003).

E.
McGahee argues next that trial counsel was ineffective for informing the jury that he had been incarcerated on death row. He argues, as he did in the lower court, that if the information had not been disclosed, the jury would have likely returned a unanimous recommendation that McGahee be sentenced to life imprisonment without parole. He further states that this unanimous recommendation would have led the trial court to impose the life-without-parole sentence. The Rule 32 court rejected this claim, finding that McGahee presented no evidence in support of it, and further finding that McGahee failed to establish any prejudice. We agree.
First, we note that, in a previous argument in this issue, McGahee urged this Court to find that trial counsel's performance was deficient and that McGahee was prejudiced because counsel did not introduce documents from Holman Prison that would have established that McGahee was a model prisoner on death row. For appellate counsel to now argue that trial counsel was ineffective for introducing testimony from a prison guard that McGahee experienced a religious conversion while incarcerated on death row is wholly inconsistent with the earlier claim of error. Counsel cannot, in good faith, rely on both sides of the same argument.
Second, we agree with the trial court that McGahee failed to establish either deficient performance or prejudice. Evidence from the prison guard about McGahee's apparently sincere practice of his religion was offered as mitigation, and the trial court found it to be a mitigating circumstance. McGahee failed to prove that, absent evidence that he had been on death row, the jury would have unanimously recommended that he receive a life-without-parole sentence. Furthermore, the court stated in its order denying relief on this claim that its sentencing decision was not influenced by the fact that McGahee had been incarcerated on death row.
Because the trial court did not abuse its discretion when it denied relief on this claim, we affirm the court's decision.

F.
McGahee argues that trial counsel failed to object to Dr. Nagi's testimony, which, he says, was improper because it was based on information from reports not been admitted into evidence, in violation of Ex parte Wesley, 575 So.2d 127 (Ala.1990). The trial court rejected this claim, finding that McGahee presented no evidence at the Rule 32 hearing on this allegation of error. The court further stated that, because the Alabama Supreme Court held that the trial court's reliance on Dr. Nagi's testimony had been proper, McGahee had failed to establish that he suffered any *225 prejudice as a result of trial counsel's failure to object to the testimony.
We find no error in the trial court's analysis of this claim. The Alabama Supreme Court held that no error occurred when the trial court considered Dr. Nagi's testimony, even though the expert's conclusions were based on reports that had not been admitted into evidence, because hearsay can properly be considered during the penalty phase of capital proceedings. Ex parte McGahee, 632 So.2d 981, 982-83(Ala.1993). Because the testimony was properly admitted, counsel was not deficient for failing to object to it. McGahee failed to establish either prong of the Strickland test. The trial court's judgment as to this issue is affirmed.

G.
McGahee's next claim is that trial counsel was ineffective to allow voir dire of prospective jurors outside of McGahee's presence at his second sentencing hearing. He argues that if counsel had taken proper steps to ensure McGahee's presence, the prejudicial procedure would not have occurred. The trial court stated that counsel did, in fact, object when voir dire proceedings began before McGahee was brought into the courtroom, so counsel's performance was not deficient. The court further found that this Court and the Alabama Supreme Court held that McGahee was not prejudiced as a result of his absence from the courtroom during general qualification of the veniremembers. McGahee v. State, 632 So.2d 976, 978-80 (Ala.Crim.App.), aff'd, 632 So.2d 981, 984 (Ala.1993).
The trial court's analysis of this claim is correct, and its judgment in that regard is due to be affirmed. When general qualification of the venire began at McGahee's second sentencing hearing before McGahee was in the courtroom, counsel objected. His performance was, therefore, not deficient. This Court and the Alabama Supreme Court found no prejudice to McGahee as a result of his brief absence from the courtroom. Because McGahee failed to prove either prong of the Strickland test, the trial court's denial of this claim was correct.

H.
McGahee argues that trial counsel was ineffective for failing to adequately argue that he had the right to present evidence of the effects of electrocution as mitigating evidence. The trial court rejected this claim, stating that trial counsel attempted at the resentencing hearing to present the evidence, so his performance was not deficient. Further, the court noted, McGahee did not present any evidence in support of this claim at the Rule 32 hearing. The court further found that the evidence McGahee sought to present was not mitigating, as determined by Alabama's appellate courts. Gaddy v. State, 698 So.2d 1100, 1142 (Ala.Crim.App.1995), aff'd, 698 So.2d 1150 (Ala.1997). We agree with the trial court's analysis of this claim. Because counsel attempted to present the evidence, and because the evidence regarding electrocution is not mitigating evidence, trial counsel's performance was not deficient and McGahee suffered no prejudice.[7]

I.
McGahee argues that trial counsel was ineffective for failing to object to the trial court's override of the jury's 10-2 recommendation *226 that he receive a life-without-parole sentence. He claims that the trial court's override of the jury's sentence was unconstitutional and was based on the court's improper findings as to aggravating and mitigating circumstances. The trial court rejected this allegation of error, finding that McGahee failed to present any evidence at the Rule 32 hearing in support of this claim. The court further stated that it firmly believed that death was the appropriate sentence for McGahee, and that McGahee was not prejudiced by counsel's failure to object at the hearing to the trial court's override. Finally, the court stated that appellate courts have upheld Alabama's override procedure.
We agree with the trial court's analysis of this claim. McGahee did not present any evidence to establish that counsel's performance was deficient or that he suffered any prejudice. Alabama's jury override procedure has been upheld by appellate courts. E.g., Ex parte Jackson, 836 So.2d 979, 988-89 (Ala.2002). In its order denying Rule 32 relief, the trial court repeatedly stated that it continued to believe that death was the proper sentence for McGahee.
To the extent that McGahee argues that the trial court improperly considered the nonfatal injuries Dee Ann Duncan suffered when finding that the crime was especially heinous, atrocious, or cruel,[8] the trial court stated that it did not consider Duncan's injuries when it made its aggravating circumstance finding. The court further noted that, on direct appeal following the second sentencing hearing, the Alabama Supreme Court found no indication that the trial court relied on any improper evidence merely because the court mentioned Duncan's injuries. Ex parte McGahee, 632 So.2d 981, 983-84 (Ala.1993).
Based on the foregoing, we find no abuse of discretion in the trial court's denial of this claim.

J.
McGahee argues that trial counsel was ineffective for failing to object to the introduction of photographs during the penalty phase of trial. He argues that the photographs were irrelevant to the determination whether aggravating circumstances existed. The trial court rejected this claim, finding that at the Rule 32 hearing, no questions were asked of trial counsel regarding his failure to object to the photographs, and that McGahee, therefore, failed to overcome the presumption that defense counsel's actions were reasonable. The court also stated that because the State relied on the aggravating circumstance that the murders were especially heinous, atrocious, and cruel, photographs of victims' bodies at the crime scene were relevant. We agree with the trial court's analysis of this claim of error, and we find no abuse of the trial court's discretion with regard to this claim.

K.
McGahee argues that trial counsel was ineffective for failing to object to the State's method of execution. He claims that, if trial counsel had presented evidence about the effects of electrocution on the body, the trial court would have sentenced McGahee to life imprisonment without parole. The trial court rejected this claim, finding that no evidence was presented at the Rule 32 hearing in support of the claim. The court further stated that death by electrocution has been upheld *227 against challenges that it constitutes cruel and unusual punishment. We agree with the trial court's reasons and with its denial of this claim. We note, additionally, that the trial court stated several times in its order that it remained convinced that death was the proper sentence for McGahee, and we find nothing in the record to suggest that the outcome of the proceeding would have been different if counsel had presented the objections to the form of execution in Alabama. Furthermore, because the primary method of execution in Alabama has been changed to lethal injection, it appears that McGahee's argument has been rendered moot. Clark v. State, [Ms. CR-99-1062, June 27, 2003] ___ So.2d ___ (Ala.Crim.App.2000)(opinion on return to remand).

L.
McGahee argues that trial counsel's errors at the penalty phase of his trial cumulatively denied him the effective representation to which he was entitled. The trial court found that this claim was untimely presented in the post-hearing brief, and that it was barred from review. We agree with the trial court. Moreover, we agree with the trial court's alternative holding, that McGahee failed to prove even a single instance of ineffective assistance of counsel at the penalty phase of the proceedings, so there could be no cumulative effect of alleged errors. For all of the reasons discussed above, we affirm the trial court's determination that McGahee is not entitled to any relief on his claims of ineffective assistance of counsel based on counsel's performance at the penalty phase of his trial.

Conclusion to Part IV
Trial counsel here was faced with representing a defendant who arguably had an almost insurmountable case against him. Numerous eyewitnesses were able to testify about the crime: McGahee was arrested at the scene of the murders; and he made unsolicited incriminating statements to the police. Furthermore, limited evidence in mitigation was available, and the evidence that was available was less than compelling. Counsel secured for McGahee a second sentencing hearing, and, in spite of the egregious circumstances of this crime, the jury returned a recommendation that McGahee be sentenced to life imprisonment without parole. McGahee received the effective assistance of counsel which he was entitled to receive. We agree with the trial court that McGahee failed to establish deficient performance and prejudice with regard to any of the allegations of error. McGahee is not entitled to any relief on this issue, and the trial court's judgment is affirmed.

V.
McGahee next argues that the prosecutors failed to make available to the defense the complete prosecution file and that, as a result, "exculpatory materials and critical mitigating evidence were withheld...." (McGahee's brief at p. 110.) Specifically, he claims that the officers who arrested him in September 1985 knew that he had been drinking, but that the officers testified at trial that they did not detect evidence of his intoxication. He further argues that the suppression of the evidence of intoxication, combined with the officers' incorrect testimony, increased the likelihood that he was improperly convicted and unlawfully sentenced to death. The trial court denied the claim, finding that trial counsel testified at the Rule 32 hearing that there had been "open file" discovery in the case and that he had copied the district attorney's file. The court further noted that McGahee had failed to call the officers at the evidentiary hearing, so he did not challenge their trial *228 testimony regarding McGahee's lack of intoxication.
We agree with the trial's analysis and conclusions. McGahee failed to support the claims raised in his petition. Trial counsel testified that an open file policy was observed, so that portion of his claim fails. There being no evidence presented at the Rule 32 hearing to support the claim regarding incorrect testimony from the officers, that portion of the claim also fails. The trial court correctly denied McGahee's claims regarding withheld discovery materials, and that judgment is affirmed.

VI.
McGahee argues in Issues V-XXIII that numerous errors occurred during the trial of his case, such as the State failed to present sufficient evidence and the trial court erred when it found that the offense was especially heinous, atrocious, and cruel when compared to other capital offenses. The trial court held that these claims were procedurally barred from review. In Issue XXIV of his brief, McGahee argues that the Rule 32 court erred when it refused to consider the merits of most of his claims for relief.
Rule 32.2(a), Ala. R.Crim. P., states that a petitioner will not be granted relief on claims that were raised or addressed at trial, Rule 32.2(a)(2); claims that could have been but were not raised at trial but were not raised, Rule 32.2(a)(3); claims that were raised or addressed on appeal, Rule 32.2(a)(4); and claims that could have been raised or addressed on appeal, but were not raised, Rule 32.2(a)(5). Alabama courts have repeatedly held that the procedural bars of Rule 32, Ala. R.Crim. P., apply with equal force to capital cases in which the death penalty has been imposed. See Dobyne v. State, 805 So.2d 733, 761 (Ala.Crim.App.2000)(citing cases), aff'd, 805 So.2d 763 (Ala.2001).
We have carefully reviewed the trial court's findings regarding procedurally barred claims, and agree that the claims raised by McGahee in Issues V-XXIII were procedurally precluded from review by Rule 32.2, Ala. R.Crim. P. We adopt the circuit's findings as to those claims, and incorporate them by reference into this opinion.[9]
As to the claim McGahee raises in Issue XXIV, that the trial court erred when it dismissed on procedural grounds the claims discussed above, we disagree. The claims for relief argued in Issues V-XXIII of the appellate brief were properly dismissed on procedural grounds, as we have discussed above. McGahee has not demonstrated, nor can he demonstrate, that the various procedural preclusions were incorrectly applied by the trial court when it reviewed the claims when they were presented in the petition for postconviction relief. McGahee is not entitled to relief on this claim.

VII.
McGahee next argues that he was prevented from fully and fairly presenting his postconviction claims for relief. First, he contends that trial court prevented him from fully presenting his claims at the Rule 32 hearing by refusing to allow him to proceed ex parte in his request for funds and by restricting his examination of witnesses, and he relies on Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 *229 L.Ed.2d 53 (1985). Second, he argues that the trial court's adoption of the State's proposed order deprived him of his right to independent judicial review. Third, McGahee claims that the appellate record is incomplete. He lists several documents and letters that, he argues, were filed with circuit court but were not included in the record. (McGahee's brief at p. 193-94, note 14.)

A.
1. Contrary to McGahee's assertions, the trial court was not obliged to allow him to proceed ex parte in his request for funds to pursue his postconviction claims. McGahee's reliance on Ake v. Oklahoma is misplaced because postconviction proceedings pursuant to Rule 32, Ala. R.Crim. P., are not criminal in nature. McGahee, himself, pursued this discretionary legal action against the State of Alabama, and the action is civil in nature. See Hamm v. State, [CR-99-0654, February 1, 2002] ___ So.2d ___, ___ (Ala.Crim.App.2002), and cases cited therein. This Court held that the fundamental fairness mandated by the Due Process Clause does not require the trial court to approve funds for experts at a postconviction proceeding. Hubbard v. State, 584 So.2d 895, 900 (Ala.Crim.App.1991). Moreover, this Court has specifically held that Ake is not applicable in postconviction proceedings. Ford v. State, 630 So.2d 111, 112 (Ala.Crim.App.1991), aff'd, 630 So.2d 113 (Ala.1993). See also Williams v. State, 783 So.2d 108 (Ala.Crim.App.2000), aff'd, 662 So.2d 929 (Ala.1992)(table).
McGahee's reliance on Ex parte Moody, 684 So.2d 114 (Ala.1996), is misplaced. In Moody, the Alabama Supreme Court held that "an indigent criminal defendant is entitled to an ex parte hearing on whether expert assistance is necessary, based on the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution." 684 So.2d at 120. As discussed above, for purposes of this proceeding, McGahee is not "an indigent criminal defendant." Instead, he is a convicted capital murderer who, in Rule 32 proceedings, is a civil petitioner with the burden of proving that he is entitled to relief on the grounds alleged in the petition he filed. Moody does not support McGahee's argument here. McGahee is not entitled to any relief on this claim of error. The trial court did not err when it denied an ex parte hearing on McGahee's request for funds.
2. McGahee also contends that his right to a full and fair hearing was restricted when the trial court interfered with his development of evidence and testimony. We have reviewed those portions of the evidentiary hearing during which McGahee claims the trial court restricted the presentation of his evidence, and we find no abuse of the trial court's discretion in the court's rulings. The trial court at a Rule 32 hearing has the authority to ensure presentation of testimony and evidence relevant to the petitioner's claims and to the State's defenses. The court is under no obligation to allow testimony and evidence that is irrelevant or cumulative. The court's limitation of testimony in this case was proper. McGahee is not entitled to relief on this portion of his claim.

B.
McGahee contends that the trial court's reliance on the State's proposed order denied him his right to independent judicial findings regarding his claims for relief. We disagree. Although the trial court apparently adopted the proposed order submitted by the State without making significant modifications, doing so resulted in no error entitling McGahee to a reversal or to any other relief. Alabama courts have consistently held that even when a *230 trial court adopts verbatim a party's proposed order, the findings of fact and conclusions of law are those of the trial court and they may be reversed only if they are clearly erroneous. E.g., Lawhorn v. State, 756 So.2d 971, 978 (Ala.Crim.App.1999). As the State points out, the trial court in this case was familiar with the trial proceedings and with the evidence presented at the Rule 32 hearing. Nothing in the record before us indicates that the trial court's findings are clearly erroneous.

C.
Finally, McGahee argues that this Court must order a remand so that the record can be corrected and/or supplemented with missing documents that he has endeavored to have included in the record. He contends that among the items missing from the record are his motion for clarification of the record, his posthearing brief, the State's proposed memorandum opinion, and various letters from the court and the parties. In its brief to this Court, the State agrees that the record should be supplemented with its proposed memorandum opinion, but that the other documents need not be included in the record.[10] In oral argument before this Court on February 25, 2002, the State acknowledged that McGahee's post-hearing brief was not in the record, and said that it would not oppose supplementation of the record with that brief.
In an August 2, 2001, order, the trial judge stated that clerk of the court had informed him that all documents filed with the court were included in the record on appeal. The court further stated, "Anything not in the record was apparently not filed by the Petitioner either through mistake, inadvertance, or in an intentional attempt to further delay these proceedings." (Supp. R. 10.) The record has been supplemented with the documents necessary to a full review of the merits of this case. Therefore, McGahee is not entitled to any relief on this claim.

CONCLUSION
For the foregoing reasons, we affirm the judgment of the Circuit Court of Dallas County. Earl Jerome McGahee is not entitled to a reversal of the trial court's denial of his postconviction claims for relief.
AFFIRMED.
McMILLAN, P.J., and BASCHAB, SHAW, and WISE, JJ., concur.
NOTES
[1] The evidence presented at the hearing will be discussed as it relates to the claims presented for our review.
[2] The clerk's record in the Rule 32 transcript is denoted "(C. ___.)". Testimony from the Rule 32 hearing is denoted "(R. ___.)".
[3] The transcript of McGahee's 1986 trial is denoted "(TR. ___.)"
[4] The trial record contains an extensive discussion of the late filing of Dr. Sapala's report, which was not delivered to defense counsel until the evening of the second day of trial. (TR. 2338-61.)
[5] To the extent that McGahee argues in his brief on appeal that trial counsel was "grossly ineffective" for failing to present the proposed mitigation to the jury, we note that this claim was not presented in the second amended petition, and it is not properly before us for review.
[6] To the extent McGahee argues on appeal that the Rule 32 court improperly rejected mitigating evidence, we note that the law is well established that the trial court at sentencing is obliged to consider evidence offered as mitigation, but that it is free to decide whether the evidence is, in fact, mitigating and the weight it is to be given. E.g., Carroll v. State, 599 So.2d 1253 (Ala.Crim.App.1992), aff'd, 627 So.2d 874 (Ala.1993).
[7] Because the primary method of execution in Alabama has been changed to lethal injection, McGahee's argument appears to have been rendered moot. Clark v. State, [Ms. CR-99-1062, June 27, 2003] ___ So.2d ___ (Ala.Crim.App.2000)(opinion on return to remand).
[8] McGahee raises this claim in Issue III(I) and (J) of his brief on appeal. We will address the claim only once.
[9] One portion of Issue IX of McGahee's brief contains an argument that Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), prohibited the trial court from imposing the death sentence, because that sentence had not been authorized by the jury. This claim was not presented in the Rule 32 petition, so it is not properly before this Court for review. E.g., Reed v. State, 748 So.2d 231, 234 (Ala.Crim.App.1999).
[10] A supplemental record was filed with this Court on December 11, 2001, and it contains the State's proposed memorandum opinion, so discussion of that item is unnecessary.